# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**APRIL PATTERSON**
        **Plaintiff,**

    v.                                  **Case No. 20-C-1888**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration**
        **Defendant.**

## DECISION AND ORDER

Plaintiff April Patterson applied for social security disability benefits, alleging that she could not work due to a variety of impairments, including disorders of the back, neck, and shoulders. The Administrative Law Judge ("ALJ") assigned to the case concluded that plaintiff could, despite these impairments, perform a range of "light" work. In this action for judicial review, plaintiff argues that the ALJ should have included additional reaching limitations in the residual functional capacity ("RFC") to account for her severe shoulder impairments.

## I. FACTS AND BACKGROUND

### A. Plaintiff's Application and Agency Decisions

Plaintiff applied for benefits on February 6, 2018, alleging a disability onset date of November 1, 2009.[1] (Tr. at 168.) In a disability report, plaintiff listed conditions of sleep apnea, anxiety, depression, COPD, bipolar disorder, and spinal stenosis. She reported a height of 5'2" and weight of 274 pounds. (Tr. at 189.)

In a function report, plaintiff indicated she was in constant pain. (Tr. at 200.) She

---

[1]The record references previous applications filed in 2005, 2013, and 2016. (Tr. at 64.)

reported that everything was painful for her, so her activities were limited. Her impairments affected her sleep and personal care ("hard to move/lift arms"). (Tr. at 201.) She did no cooking or house/yard work (Tr. at 202), and her daughter shopped for her (Tr. at 203). She reported no hobbies and seldom spent time with others. (Tr. at 204.) She indicated that her impairments affected nearly every ability listed in the form, including reaching, writing: "Pain changes EVERYTHING!!" (Tr. at 205.) She reported that she used a walker, brace/splint, and sling. (Tr. at 206.) She took a variety of medications, including Neurontin, Baclofen, Meloxicam, and Tylenol 4, which made her sleepy. (Tr. at 207.)

In a physical activities addendum, plaintiff wrote that she could continuously sit for 10 minutes, stand for five minutes, and walk for five minutes. In a day, she could sit, stand, and walk zero hours. She could lift 10-20 pounds. (Tr. at 208.)

The agency denied the application initially on November 2, 2018 (Tr. at 62, 86), based on the review of Ronald Shaw, M.D., who opined that plaintiff could perform medium work with no other limitations (Tr. at 71). Plaintiff requested reconsideration, but the agency confirmed the denial on June 20, 2019 (Tr. at 74, 96), based on the review of Marc Young, M.D., who agreed with the previous assessment (Tr. at 83). Plaintiff then requested a hearing. (Tr. at 112.)

**B.     Hearing**

On May 8, 2020, plaintiff appeared with counsel for a telephonic hearing before the ALJ. The ALJ also obtained testimony from a vocational expert ("VE"). (Tr. at 33.)

At the outset of the hearing, the ALJ asked counsel to identify the severe impairments, and counsel mentioned neuropathy, right shoulder impingement, COPD, osteoarthritis of the knees, migraines, and anxiety/depression. (Tr. at 38.) The ALJ asked for objective evidence

of the right shoulder impingement, but counsel was unable to provide a citation. (Tr. at 40.) However, counsel did reference an MRI of the right shoulder that showed tearing, arthropathy tendinitis, and hypertrophy. (Tr. at 41.)

Plaintiff testified that she was being treated for fibromyalgia with gabapentin. (Tr. at 41-42.) She initially started with Lyrica, but then changed to gabapentin within the last four years. The medication helped somewhat, but not as much as it used to. The fibromyalgia pain was mostly in her neck and shoulders. (Tr. at 42.) She testified that she had also used different types of pain medication, including Percocet, Tramadol, and muscle relaxers, in the past. (Tr. at 43.) She received physical therapy for her shoulders, which did not help. She also had therapy and took pain medication for her knees. (Tr. at 44.) She stood 5'2" and weighed 217 pounds. (Tr. at 48.) She lived in an apartment with two of her sons, aged 18 and 23. (Tr at 51.) Before that, she cared for her terminally ill mother for about two months. (Tr. at 51-52.) Before that, she lived in an apartment with four of her children. (Tr. at 52-53.) Plaintiff testified that she had seven children and raised six of them. (Tr. at 53.) She last worked, as a mortgage accounting clerk, in 2006/07. She was laid off at that time due to the market crashing. (Tr. at 55.)

The ALJ then turned to the VE, asking a hypothetical question assuming a person of plaintiff's age, education, and experience, able to perform medium work, involving simple, routine, and repetitive tasks, with no fast paced work and only simple work-related decisions and occasional workplace changes, and only occasional interaction with the public, coworkers, and supervisors. (Tr. at 56.) The VE testified that such a person could not perform plaintiff's past work but could do other jobs, such as dining room attendant, linen room attendant, and dayworker. (Tr. at 56-57.) The second hypothetical reduced the exertional level to light, with

3

the same mental limitations, but also limited the person to occasional climbing and postural movements and avoiding more than moderate exposure to heights or hazards. The VE testified that such a person could work as a marker, garment sorter, and office helper. (Tr. at 57.)

**C.   ALJ's Decision**

On May 28, 2020, the ALJ issued an unfavorable decision. (Tr. at 10.) Following the familiar five-step evaluation process, see 20 C.F.R. § 416.920(a)(4), the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since February 6, 2018, the application date. (Tr. at 15.) At step two, the ALJ found that plaintiff suffered from the severe impairments of fibromyalgia, disorders of the back, neck and bilateral shoulders, and morbid obesity. (Tr. at 15) The record referenced a variety of other impairments, including COPD, osteoarthritis of the knees, anxiety, and depression, which the ALJ found non-severe. (Tr. at 15-21.) At step three, the ALJ found that none of plaintiff's impairments met or medically equaled a Listing. (Tr. at 21)

Prior to step four, the ALJ found that plaintiff had the RFC to perform light work, with occasional climbing and postural movements and avoiding more than moderate exposure to heights or hazards. (Tr. at 22) In determining RFC, the ALJ considered plaintiff's alleged symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the medical and other evidence of record. He also considered the medical opinion evidence. (Tr. at 22.)

In considering the symptoms, the ALJ acknowledged the required two-step evaluation process, under which he first had to determine whether plaintiff suffered from an underlying medically determinable impairment that could reasonably be expected to produce the alleged

4

symptoms. Second, once such an impairment had been shown, the ALJ had to evaluate the intensity, persistence, and limiting effects of plaintiff's symptoms to determine the extent to which they limited her work-related activities. At this second step, if the statements were not substantiated by the objective medical evidence, the ALJ had to consider the other evidence in the record to determine if the symptoms limited plaintiff's ability to do work-related activities. (Tr. at 22.)

Plaintiff based her application on allegations of sleep apnea, anxiety, depression, COPD, bipolar disorder, spinal stenosis, and pain in her knees, back and shoulders. She alleged constant pain, which interfered with sleep and affected her ability to perform personal care. She reported using a sling and a walker, and took medications which made her sleepy. She reported that she could continuously sit for 10 minutes, stand for five minutes, and walk for five minutes; in a day, she was unable to sit, stand, or walk for even an hour. She reported that she was limited to lifting no more than 10 to 20 pounds. (Tr. at 22.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence in the record. (Tr. at 23.) The ALJ first reviewed the objective medical evidence regarding each of plaintiff's impairments. (Tr. at 23.) Of significance to the argument on appeal, the ALJ stated:

> The claimant's complaints of shoulder pain predate the application date. She engaged in physical therapy for back and shoulder pain in 2010, which she reported was not helpful. However, she only engaged in "a couple sessions." She received an epidural steroid injection in January 2015 that she reported helped "a little bit." She presented to the emergency room in March 2017 for left shoulder pain. She reported exquisite pain with gentle palpitation of the shoulder and pain with movement. An x-ray of the left shoulder was normal. She

5

> presented again for shoulder pain in April 2017.
>
> She presented to the emergency room again in June 2017 for right shoulder pain. She was noted to have moderate tenderness to palpitation in her right shoulder, intact motor and sensory function, limited range of motion due to pain and otherwise full range of motion in her right upper extremity. An x-ray of her right shoulder was normal. She was diagnosed with a "likely right shoulder sprain" and was given a sling, Vicodin and ibuprofen. Her July 2017 treatment note for her right shoulder indicated that the physical examination revealed no atrophy or deformity, tenderness to palpation, 0 to 30 degrees of flexion and abduction, 0 to 40 degrees external rotation and exquisite pain and weakness with resisted external rotation and abduction. The impression was right shoulder rotator cuff impingement syndrome with pain out of proportion to examination and radiographs.
>
> However, MRIs of her shoulders show that she had shoulder tendon, labral and rotator cuff tears and tendinopathy. An August 2017 MRI of her shoulder showed: (1) complete supraspinatous tear with 2 cm retraction; (2) undersurface partial tears of the infraspinatus; (3) mild AC joint arthropathy with undersurface hypertrophy; and (4) tendinosis along the intra-articular aspect of the biceps tendon. A January 2020 MRI of her left shoulder showed a full-thickness tear and retraction of most of the distal supraspinatous tendon, mild to moderate tendinopathy and partial thickness tears elsewhere in the rotator cuff, AC arthropathy, LHBT partial tears and tendinopathy, mild glenohumeral joint effusion and probable labral tears and fraying. A January 2020 MRI of her right shoulder showed full-thickness tears and retraction of the distal supraspinatous and infraspinatous tendons that had worsened since prior imaging, tendinopathy of the LHBT, AC arthropathy, glenohumeral joint effusion and possible areas of labral tears and fraying.

(Tr. at 23-24, record citations omitted).

The ALJ concluded that plaintiff's back, neck and shoulder impairments, and her fibromyalgia, limited her from medium work or higher. He found her capable of a range of light work, lifting no more than 20 pounds. Due to the combination of these impairments, she was further limited in climbing and postural movements. (Tr. at 24.)

The ALJ found that while plaintiff suffered from severe impairments, her allegations of disabling symptoms and limitations were not consistent with the totality of the evidence. (Tr. at 24.) First, the ALJ noted that the objective medical evidence documented mostly mild

6

abnormalities, with the exception of neck issues at C5-6 and the bilateral shoulder tears noted by MRI. (Tr. at 24-25.)

Second, the ALJ found that plaintiff retained significant functional abilities, as shown by clinical findings in the record. For instance, plaintiff's providers generally noted relatively mild physical findings during the relevant period, which were inconsistent with plaintiff's reported limitations.

> Regarding her shoulders, the physical examinations also generally showed good function. Her upper extremity and grip strength examinations generally noted 5/5 strength and normal appearance. In a November 2019 examination, she had 5/5 strength in the right upper extremity, but her left upper extremity had give-away weakness with hand grip that improved with encouragement. The objective imaging does support that she had degenerative joint disease; however, it was described as minor. December 2019 x-rays of her bilateral shoulders showed minor degenerative changes, and subacromial spur formation

(Tr. at 25, record citations omitted.)

Third, the ALJ noted that the longitudinal treatment record reflected that plaintiff reported improvement in symptoms with largely routine and conservative treatment, and managed her symptoms with physical therapy, injections, and medication. Additionally, the record demonstrated that she was not always consistent in following treatment recommendations. (Tr. at 25.) For instance, she did not consistently use a prescribed cane, refused to sign a contract with pain management, and did not follow up with orthopedic referrals. (Tr. at 25-26.)

Fourth, the ALJ concluded that plaintiff's activities indicated she was more functional than alleged. In August 2019, she reported that her daily routine included caring for her grandchildren, indicating abilities greater than her reported limitations. She also testified to taking care of her terminally ill mother for some months, and she raised six children since the alleged onset date. (Tr. at 26.)

Finally, the ALJ noted inconsistencies in the record undermining plaintiff's allegations of disability. For example, in October 2018, she had a generally normal physical exam but was noted to be "very dramatic" during the exam. In February 2019, she presented to her family doctor for pain management, and the provider noted her to be "very dramatic" and inconsistent in her presentation in that she was rocking and appeared to be in pain at first and crying at any touch, but calm when talking; due to her reports of significant pain with any type of touch, a complete exam could not be performed. And an October 2019 note indicated that plaintiff had a "lack of consistent effort." (Tr. at 26.)

As for the medical opinion evidence, the ALJ found unpersuasive the opinions of the agency medical consultants, Drs. Shaw and Young, who found plaintiff capable of medium work. While these opinions were reasonable based on the evidence at the time of their review, later evidence indicated plaintiff was more limited. The ALJ found:

> that the evidence is more indicative of light work, such as the more significant abnormalities shown by MRI in the neck and shoulders received in evidence after the state agency reviews. The above residual functional capacity to a range of light work is reasonably supported by the generally good clinical findings and conservative treatment over the longitudinal treatment record, as well as the inconsistencies noted by her providers with her reports, and evidence of reasonably good function shown by her activities.

(Tr. at 26.)

At step four, the ALJ found that plaintiff had no past relevant work. (Tr. at 26.) At step five, he found that plaintiff could perform jobs existing in significant numbers in the economy, as identified by the VE, including marker, garment sorter, and office helper (Tr. at 27). He accordingly found plaintiff not disabled and denied the application. (Tr. at 28.)

On October 16, 2020, the Appeals Council denied plaintiff's request for review. (Tr. at 1.) The ALJ's decision now final, see Wilder v. Kijakazi, 22 F.4th 644, 650 (7th Cir. 2022),

8

plaintiff commenced this action for judicial review.

## II. STANDARD OF REVIEW

A reviewing court will affirm if the ALJ supported his decision with "substantial evidence," meaning such relevant evidence as a reasonable mind could accept as adequate to support a conclusion. Wilder, 22 F.4th at 651. The court will not, under this deferential standard, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. Deborah M. v. Saul, 994 F.3d 785, 788 (7th Cir. 2021).

Although judicial review is deferential, "it is not abject." Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010). The court must conduct a critical review of the entire record, considering both the evidence that supports, as well as the evidence that detracts from, the ALJ's decision. Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Kasarsky v. Barnhart, 335 F.3d 539, 543 (7th Cir. 2002). The ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning. In other words, the ALJ must build an "accurate and logical bridge" from the evidence to his conclusions so that the reviewing court may assess the validity of the ALJ's ultimate findings and afford the claimant meaningful judicial review. Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002).

## III. DISCUSSION

Plaintiff argues that the ALJ erred by failing to include reaching limitations in the RFC and in his hypothetical questions to the VE. (Pl.'s Br. at 13-14.) On review of the entire record, I conclude that the matter must be remanded for consideration of possible reaching limitations and, if warranted, presentation of such limitations to a VE.

9

"In this circuit, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." Varga v. Colvin, 794 F.3d 809, 813 (7th Cir. 2015). "The reason for the rule is to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert did not know the full range of the applicant's limitations." Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). "However, this does not mean that every limitation alleged by the claimant must be included—only those supported by the evidence." Blom v. Barnhart, 363 F. Supp. 2d 1041, 1056 (E.D. Wis. 2005) (citing Ehrhart v. Sec'y of HHS, 969 F.2d 534, 540 (7th Cir. 1992)).

In her pre-hearing function report, plaintiff alleged difficulty lifting her arms (Tr. at 201) and reaching (Tr. at 205); the medical evidence includes consistent references to limited range of motion (Tr. at 543, 540, 534, 263, 265, 268, 324, 287, 337, 376, 401, 1306, 1438, 1471) and pain with lifting of the arms (Tr. at 322, 287, 1395); and the objective scans documented significant shoulder abnormalities (Tr. at 503, 1477, 1531, 1533-34). The ALJ acknowledged some of these examinations findings, as well as the diagnostic evidence of severe shoulder impairments, yet he did not address possible reaching limitations. Instead, he purported to account for plaintiff's shoulder impairments by limiting her to light work. See Brown v. Colvin, No. 1:14-cv-01797-JMS-MJD, 2015 U.S. Dist. LEXIS 81093, at *24-25 (S.D. Ind. June 3, 2015) (explaining that a lifting limitation does not necessarily account for manipulative/reaching limitations), adopted, 2015 U.S. Dist. LEXIS 80830 (S.D. Ind. June 22, 2015).

As the Commissioner notes, the ALJ provided a number of reasons for questioning plaintiff's credibility, including instances where she appeared to be embellishing or faking during

10

exams.[2] (Tr. at 26, citing Tr. at 661, 1069, 1437; see also Tr. at 315, 324, 334, 692, 582, 1123, 1415, 1487.) However, the ALJ did not specifically explain why plaintiff's alleged reaching limitations should be discounted. While the ALJ was not required to assess each and every statement plaintiff made, see Shideler v. Astrue, 688 F.3d 306, 312 (7th Cir. 2012), he should not have rejected an important line of evidence without explanation, see Golembiewski v. Barnhart, 322 F.3d 912, 917 (7th Cir. 2003).

The ALJ acknowledged that the recent diagnostic findings required a more restrictive RFC than the agency medical consultants proposed, but he found that the generally good clinical findings supported his conclusion. (Tr. at 26.) The ALJ seemed most impressed by the findings of normal strength, but plaintiff does not allege inability to handle the lifting/strength requirements of light work; instead, she argues that the ALJ should have included reaching limitations, which are supported by exams consistently showing limited range of motion. The Commissioner responds that such evidence does not compel a finding that plaintiff is more limited than the ALJ found. See Gedatus v. Saul, 994 F.3d 893, 900 (7th Cir. 2021) ("We will reverse only if the record compels a contrary result.") (internal quote marks omitted). However, the issue here is whether the ALJ provided a sufficient explanation, not whether the evidence requires a different conclusion.

The Commissioner notes that no doctor concluded that plaintiff required reaching, or any other, limitations beyond those set forth in the RFC. See Dudley v. Berryhill, 773 Fed. Appx.

---

[2]The Commissioner spends much of her brief defending the ALJ's credibility determination. (Def.'s Br. at 4-9.) However, plaintiff's argument focuses narrowly on the omission of reaching limitations, an issue the ALJ did not specifically address. As plaintiff notes in reply, none of the reasons provided by the ALJ and the Commissioner for discounting her subjective complaints specifically speak to her shoulder impairments or alleged reaching limitations.

11

Case 2:20-cv-01888-LA   Filed 02/25/22   Page 11 of 13   Document 17

838, 842 (7th Cir. 2019) ("Indeed, the hypothetical that the ALJ posed to the vocational expert contained limitations that were more restrictive than the functional work-related limitations identified by the state-agency doctors."); Best v. Berryhill, 730 Fed. Appx. 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (quoting Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004)); see also Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019) ("Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand."). However, courts have distinguished Best, Dudley, and Jozefyk where, as here, the record contains "sufficient evidence of limitation such that the RFC formulation conceivably could have been different had the ALJ considered the evidence." Sheila H. v. Saul, No. 18 C 7379, 2021 U.S. Dist. LEXIS 1885, at *5-6 (N.D. Ill. Jan. 6, 2021). Here, as in Sheila H., plaintiff does identify evidence of additional limitation, id. at *11, and the ALJ did not explain how the treatment records documenting various arm/shoulder problems factored into his finding on reaching limitations, id. at *7.

Finally, omission of possible reaching limitations cannot be deemed harmless, as at least two of the positions identified by the VE (garment sorter and officer helper) require frequent reaching. (See Pl.'s Br. at 16, citing Selected Characteristics of Occupations.) The Commissioner does not argue otherwise.

## IV. CONCLUSION

Plaintiff asks for a judicial award of benefits (Pl.'s Br. at 16), but she fails to develop an argument in support of that unusual remedy. See Kaminski v. Berryhill, 894 F.3d 870, 875 (7th

12

Cir. 2018) ("When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits."); Allord v. Astrue, 631 F.3d 411, 415 (7th Cir. 2011) ("An award of benefits is appropriate . . . only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits."). The record here does not support a clear entitlement to benefits, and the errors identified above are properly addressed through further proceedings before an ALJ. See, e.g., Jensen v. Berryhill, No. 17-C-0755, 2018 U.S. Dist. LEXIS 70500, at *45-46 (E.D. Wis. Apr. 25, 2018). The ALJ must on remand determine whether plaintiff requires reaching limitations and, if so, present those limitations to a VE.

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and the matter is remanded for further proceedings consistent with this decision. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of February, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge